And we'll proceed now to hear argument in the next case on calendar for argument, which is 24-5581, United States of America v. Jared, Josh, John. And we will hear first from Mr. Newton. You may proceed. Thank you. Good morning, and may it please the Court, I would like to reserve two minutes of my 10 for rebuttal. I want to address two issues this morning. First, the threshold issue of whether the standard of review is de novo or abuse of discretion. And second, whether applying the extremely pro-defendant test concerning defensive jury instructions, including alibi. There was sufficient evidence offered at trial, at Mr. John's trial, to support his request. Can I go to the second point? Because I think when I read the transcript of the judge, the Judicial Court was grappling with the evidence that was presented. And I think she would indicate that there was a lack of evidence, that it wasn't, there was an absence of evidence, as I think her point, that typically he comes to help on beginning at about 8 o'clock in the morning to take care of his daughter, that that's typically what he does. But she didn't have a specific recollection. Do you think that that is sufficient for, and it's an honest question, I really want to get to this point, whether that is enough to say that that is evidence and not just an absence of evidence? That's what I'm trying to figure out. That's a fair question. I think you have to do more than simply look at her testimony. And it was, I explained this in my brief, it was customarily, not just typically, but regardless, I'm not sure how much of a difference that makes, but usually customarily, typically he would be there. But there's more than just that. She specifically said the reason for that was she was the legal custodian of a 19-month-old baby, his daughter, but she had the custody of the baby. And this is really important. This is on pages 478 and 481 of the excerpts of record. She said, she could not care. I cannot do both of the things at the same time, meaning care for her patient and care for a 19-month-old baby. And it's not just... The time matters a lot. And for alibi, you have to have some sufficient basis for saying that at the time of the crime, there is a foundation on which the, you know, to draw some kind of an inference with respect to him being at another place. And I think what troubled the district court was that there wasn't a lot of precision here. She didn't say he was there every time, you know, consistently like clockwork at 8 o'clock. The fact that he generally was there from 8 to 2, you know, or whatever was necessary, was 8 to 2 on that day. That doesn't establish that he was punctual. There was no testimony that was punctual. Maybe it was 15 minutes late every time, in which case, you know, if we get to 8.15, 8.30, the alibi gets a lot shakier given the timeline here. Two responses to that. Number one, if you parse her testimony very carefully, and remember, this has to be looked at in a light most favorable to Mr. John, drawing all inferences that can be reasonably drawn in his favor. This court has said the evidence can be weak and sufficient of doubtful credibility. And I think we also need to clarify something. We're talking here about circumstantial evidence, not direct evidence. Certainly, circumstantial evidence can be considered just like it can be considered when you decide whether there's sufficient evidence to convict somebody. A fortiori, you should be allowed to consider it for raising that more than a scintilla. But let me answer your question. So if you parse her testimony carefully in response to defense counsel's questions, I believe it was on redirect examination, she said, he was there at the same time I was. And she said, I could not care for a 19-month-old and my patient ever say anything specifically about his habits on the question of arrival. She didn't. But you can infer or a rational jury looking at the evidence in a light most favorable to Mr. John could infer that there is no way that. And I'm going to get to a second point, which is the record permits a rational finding. He showed up. He would have to have up at 930 or later that morning. And I'll get to that in a minute, an hour and a half or more caring for a 19-month-old baby and caring for a patient who requires your time the entire time. A rational jury could infer from that circumstantial evidence that she would have remembered if he weren't there during that hour and a half period, because she said he's there the entire time when I am on duty. That can be inferred in his favor. This is not whether there's sufficient evidence to convict him. It's not whether there's even overwhelming evidence. The Supreme Court established that in 1896 in Stevenson. That's not your inquiry. You're putting on the converse filter that you would normally put on if you were engaging in a sufficiency of the evidence review. Suppose just hypothetically, suppose we would agree with you. Why wouldn't any error be harmless? Because, you know, unlike other types of defenses that are genuinely affirmative defenses that put a burden on the defendant, this is really sort of subsumed within the elements just can't be met. He couldn't have committed the crime if he physically couldn't have been there. We call it alibi, but therefore it could still be deemed to be harmless in the context of the case as a whole. There are numerous binding published Ninth Circuit precedents that say if a court erred by not submitting an alibi jury instruction because a rational jury could have inferred under this very pro-defendant standard, it is a structural error. There is no harmless error analysis. Are those cases are you familiar with Nieder versus the United States? Absolutely. Are those cases consistent with Nieder? Nieder says a missing element can be harmless and is not structural. So how is an alibi instruction a structural error? Neither. It was undisputed, completely undisputed, if you read Nieder very carefully, that there was no issue at all about materiality. This is very different. This was contested and there was no appropriate vehicle in the form of an alibi defense instruction. But Nieder doesn't apply only when there's no dispute or something is stipulated. Nieder involved a missing element where there was no, the court in Nieder did not do what I'm asking you to do, which what your precedent requires you to do, which is to look at the evidence in a light most favorable to the defendant. In Nieder it was undisputed, so there was uncontradicted, there was no need to do that. Here it's disputed whether he showed up at his mother's house. Let me also, you can't overrule your cases based upon Nieder because it does not directly on point. You'd have to go en banc to address that. I want to get back to I think the question that Judge Mendoza asked at the start of your presentation, which is we have to determine if there is evidence upon which the jury could rationally sustain the defense. And here what we have is testimony about sort of a typical practice and a lack of memory about anything on this particular date. So in my view, what you have is sort of the possibility of evidence of an alibi, but there's not active evidence. There's no evidence that this is an alibi. So I'm still struggling with, and it gets back to Judge Mendoza's question, which is how does sort of the full setup, but then you have the absence of evidence, how does that absence of evidence become or transform into evidence under our case law that is enough to be able to say that this should have gone to the jury? And what's your best case for sort of the absence of evidence being evidence for purposes of? Well, there are actually very few alibi cases in the Ninth Amendment. Omega, I think, is probably the leading one, and it was a no-brainer because there was explicit testimony that someone was up there. But I'm going to go back to my argument. You've got to look at all the evidence, circumstantial and direct. A person who has caretaking responsibilities legally for the patient and also legally for the 19-month-old would remember in an hour and a half or more not having the caretaker who is normally coming in, customarily coming in. In our legal system, all the time, we rely upon normal practices and absence of a normal practice. Would you agree that under sort of the test that you just articulated, and we're considering the circumstantial evidence that's created by this testimony, that it would then also be proper to consider the timeline and all of the other potential facts that exist that would make an alibi not sufficient to submit to the jury? Absolutely. Read my reply brief. I go minute by minute. Literally, a rational jury could find, easily find, based on this record, based on the hospital records, based on the victim's testimony about how long he wandered in the remote area, easily could find that Mr. John could have not gotten to his mother's house any earlier than 930. That's a really important fact. The defense counsel made this timeline argument what was essentially the substance of the alibi argument in closing argument, correct? Not the way I'm making it, no. But that's beside the point because he didn't get an alibi instruction. That's the And he makes the reasonable doubt argument based on the mother's testimony. Not looking at the hospital records, not looking at the piecing the minutes together about the hour and a half, but that's beside the point that he didn't get an alibi instruction that he requested. Why is that important? Why is it important? Because if you have an hour and a half or more caretaking for a sick patient and a 19-month-old and you normally require someone to be there because you can't do both at the same time, a rational jury could infer she would have remembered that not being. She also testified she had no reason to believe anybody else came. She needed somebody. That's critically important. It's been three years also, you have to remember, over three years when she testifies. So you can't fault her for not remembering that specific day, but you can certainly, a rational jury could say, how is this lady going to take care of a 19-month-old and a sick patient at the same time without her son who's normally there and not remember it? So the point is, a jury could infer, under this very pro-defendant standard, that if he hadn't been there at eight or shortly thereafter, she would have remembered. All right, thank you, counsel. We've taken you over with questions, so I'm going to give you two minutes for rebuttal that you requested, and we'll hear now from Ms. Kennedy. Good morning, Your Honors. May it please the Court, Alana Kennedy appearing for the United States. The crux of an alibi defense is the physical impossibility of a defendant's guilt based on location somewhere else than where these crimes occurred at the relevant time. Well, why isn't it to their argument? And they briefed this out, and looking at the record, they say, look, there's evidence from his mother that says that he's typically there, and I don't know the exact word, but he's typically there between eight and two because she takes care of an 18-month-old child that needs care. She can't do both. That's also in the record. So she can't do both. He's typically there, and no one else is there to take care of the child. Why isn't that perhaps weak, but nonetheless evidence, even circumstantial evidence? Your Honor, I'd like to correct a couple of the facts in the record there. There was not about when John would arrive at Ms. Lewis's house, what time he customarily arrived, what time he arrived on that particular date. And actually, looking at her time card at 7 ER, 745, the Court will see that she typically worked six-hour shifts, and each day, that six-hour period ranged. So, for example, the day before these crimes, she worked 10.30 a.m. to 4.30 p.m. The day after, she worked 8.45 a.m. to 2.45 p.m. So these times change regularly. There was no set schedule that she started promptly at 8 a.m. Secondly, Your Honor, there was... But part of her testimony was that her typical time was eight o'clock. Is that incorrect? That is incorrect, Your Honor. Okay. She was specifically asked whether she had a specific memory of John watching his daughter being at the house at the same time as her on July 19, 2020. That's at 5 ER, 478. And she said no. She was asked whether she could remember what he was doing on that date. And she responded, I don't remember too far back. That's at page 480. And Lewis's father lived with her. So in addition to Ms. Lewis having custody over John's minor daughter, her father also lived with her. Her work as an at-home caregiver spanned basically 24 hours a day. She testified that she would specifically record her hours for purposes of paying, and she made sure to do that accurately. But her caring for her father and caring for John's minor daughter didn't change simply because she logged into work at 8 a.m. or 8.45 a.m. on a particular day. These were two people that lived with her day in and day out. And she could care for both at the same time. And I think one of the things that's easy to get distracted about with some of the times discussed in the record and acknowledging that we need to do this evidence in the light most favorable to John is that the 8 a.m. time period is artificial. That is essentially a fake deadline of when all of this needed to be completed. Where does that come from? Where did the 8 a.m. come from? Ms. Lewis's time card. Okay, so from the time card, so there is some evidence. I asked you that question earlier. You said no, that was not, that that was incorrect. So there is some evidence. Your Honor, there's evidence that Ms. Lewis worked at 8 a.m. Most favorable to the defendant is what the standard is here. So there is evidence that at 8 o'clock is the time period that we, but looking at the and the evidence in the light most favorable to the defendant, we have to look at that. Is that accurate? That is correct, Your Honor. But I think there's a distinction there between viewing the light and in viewing the evidence in the light most favorable to the defendant and making assumptions that are unsupported by the record. And that's illustrated in the Roper case that the government cited in its response brief. That's a Fifth Circuit case. And in that case, the defendant had alleged error for failure to instruct on an alibi, where his car was inoperable. So he said, I couldn't have been at the place where these crimes were committed because my car didn't run. And the Fifth Circuit in that way, I guess I'm coming back to my question because I really, and I'm trying to really understand this position by the defense and the government's argument, whether or not it's considered evidence. They indicate that this is circumstantial evidence, right? And you can quibble about whether or not 8 o'clock is a time frame that is shown on her time card, but it is evidence that the court could have considered. Correct? It's evidence that the court, yes, could have considered. In the light most favorable to the defense in this analysis, correct? Yes. Okay, so there's that. Let's stop there. I'm just trying to get an understanding of the evidence that exists or doesn't. There's that. There's also the testimony that there's a 19-month-old baby that is in the home, correct? Correct. And would that be considered circumstantial evidence or not? Is that on this point? I don't think so, Your Honor. I don't think so based on opposing counsel's comments about viewing the record as a whole. I mean, certainly we have facts and evidence here to include that Ms. Lewis, per her time card, worked at 8 a.m. to 2 p.m. on July 19th. We know that she was caring for both her father and John's minor daughter at the same time. But these crimes occurred at 7 a.m. or shortly thereafter. And we acknowledge that there's some conflicting evidence about potentially how long the drive took. Counsel, can you address the arguments that your friend on the other side made that our cases and the circuit indicate that the evidentiary threshold to get a defense to the jury is low? And so in answering that question specifically on those line of cases, I'm curious to know, is your argument that there is no evidence? Because I think the cases say that if alibi evidence is weak or insufficient, that still may be enough. And so I want to understand if you're saying that it is. Because I think you just said there's facts in the record that maybe could be read both ways. But I want to make sure I understand. Are you saying that there is no evidence, and that's why even this low threshold isn't met in this case? Or that you disagree sort of with the reading of the cases that indicate that the threshold is low? I do not disagree with the line of the cases that say the threshold is low. There has to be at least some foundation in the evidence to support that instruction. And certainly we know from the cases that that needs to be more than a scintilla, but really it is slight. So we do not disagree with that. The issue I think is, to Judge Mendoza's point earlier on, is that this is really an absence of evidence. We have facts in the record, but opposing counsel relies on multiple assumptions and leaps to get to the point of interpreting this evidence in the way that he would have this court do that. And really, there's three reasons why the alibi defense was properly excluded here. And that was, first, Ms. Lewis's testimony. Now, wait a minute. The way you've phrased that was clearly too strong. The alibi defense was excluded? It was not. He was permitted to argue to the jury that he wasn't there and couldn't have been there because the mother testified and had records that she worked from 8 a.m. to 2 a.m. He made that argument in closing. Your Honor is correct, and I misspoke. I meant the jury instruction was properly not provided. First, the alibi instruction was not provided is what you intended to say, correct? Yes. And under Matthews, though, if there's evidence about a specific defense, doesn't Matthews tell us that the defendant is, in fact, entitled to that instruction? Only if there's some foundation in the evidence, Your Honor. And I think that what I'd like the court to focus on is that, first, Ms. Lewis's testimony, as it is in the record, did not establish that John was at her home on July 19, 2020. To the extent that this court finds her testimony raised the question of his whereabouts on that date, there was no testimony about his presence there at the relevant time. And it's not just the location that matters for the alibi instruction. It's also the relevant time. And Zuniga and those other cases speak to that. Her testimony did not establish that he was at her home at 8 a.m., that he was at her home at a particular time that day, that he arrived at around the same time every day. And really, the relevant time here is 7 a.m. And the evidence in this case showed that he could and did commit all of these crimes before this artificial 8 a.m. deadline. And so based on that, to Judge Mendoza's point, this is really the absence of evidence. And we would respectfully ask this court to affirm. Well, counsel, it wasn't my point. It was my question. Thank you. Thank you. All right. Thank you, counsel. We'll hear rebuttal. I would like to read the exact testimony from the mom that supports the alibi defense. This is on page record excerpt or excerpts of record 478. This is the question by Mr. Wallen, trial counsel. Question. What did Mr. John do, if anything, when you would be on duty watching your father? Answer. On duty, by the way. Not at any time. On duty. Answer. He would take care of his daughter. Question. And where would that occur? Answer. At the house. Question. Whose house is that? My house. Question. So you and him would be there at the same time? Yes. Okay. That's on page 478. Page 481. Question from Mr. Wallen. You said that earlier, Josh, whenever you were on duty, Josh would customarily come over to the house to take care of the baby. Yes. Then jump ahead to question. Who usually came over to take care of the baby, Josh? All right. Do you have any reason to believe that somebody else came over to take care of the baby that day? No. And then there's one I missed on page 478, which is I could not do. Page 479. I could not do her job. He lived with me, but those were the hours that I had to make sure I did my job. They all support an inference that when he was generally on duty, he was there. But the question of alibi gets to the impossibility of by location. So the exact time matters.  But there's no foundation. He could have been in there. Lots of people who show up at work every day and they're 10 minutes late every day or they're 10 minutes early every day or they're there on the dot. There's nothing, no foundation at all about his arrival practices and how timely he was. So there is, if you infer from her testimony, and this is such an important point spelled out in my reply brief in response to their arguments, a rational jury could easily have found that if you believed everything Mr. Pagay said combined with the hospital records, that Mr. John could not have arrived that day any earlier than 930, an hour and a half with a 19-month-old baby and you were under a legal obligation to care for. A rational jury could say it's been over three years. Of course, she doesn't remember that specific date. But boy, looking at all that stuff, that makes me have a reasonable doubt about whether he was in fact the second perpetrator. Maybe it was weak. Maybe it was substantial. But it was enough. The district judge seemed to balk at one particular sentence in the proposed instruction, and it's the first sentence. Evidence has been admitted that the defendant was not present at the time and place of the commission of the crime charged in the indictment. Almost seems like the district court was putting words into my mouth and that is saying I drew the inference. Evidence admitted that the defendant was not present, didn't say from which you might find that the jury, you know, you might find that the defendant was not present. How does that play into this? I don't think it plays into it. I think looking at decades of case law, it's not whether a judge playing the gatekeeping role subjectively, whether she believes it, it's whether a rational jury could. The instruction given to the jury isn't going to tell you, hey, let's discuss the standards of review on appeal. It's going to give that kind of common sense language. But from a judge playing the gatekeeper role, she can't do this subjectively. This is a objective standard and probably the most pro-defendant standard there is in terms of a sufficiency of the evidence equation. All right. Thank you, counsel. Thank counsel on both sides for the helpful arguments in this case. And the case just argued will be submitted.
judges: COLLINS, MENDOZA, DESAI